1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          EASTERN DISTRICT OF WASHINGTON
8  WILLIE S. CARTER,
9          Plaintiff,                    NO.  CV-12-00596-JLQ
10    v.                                 MEMORANDUM OPINION;
                                         ORDER RE:  MOTIONS FOR
11  CAROLYN W. COLVIN[1],                SUMMARY JUDGMENT
    Commissioner of Social Security,
12
          Defendant.
13

14         Plaintiff appeals from the final decision of the Commissioner of the Social
15  Security Administration ("Commissioner") which denied his applications for
16  Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"),
17  after a hearing before an Administrative Law Judge ("ALJ").   This case, filed on
18  November 15, 2012, was reassigned to the undersigned on September 3, 2013.
19  (ECF No. 21).
20         Before the court are Cross-Motions for Summary Judgment.  (ECF Nos. 16,
21  19).  Plaintiff also filed a Reply brief. (ECF No. 20)  Plaintiff is represented by
22  attorneys Maureen Rosette and Dana Madsen.  Defendant is represented by
23
24         [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
25  February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
    Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.
26  No further action is necessary to continue this action by reason of the last sentence
27  of 42 U.S.C. § 405(g).
28

ORDER – 1

Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Jeffrey Staples.   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.  LEGAL STANDARDS

### A.    Sequential Evaluation

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the  impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is, benefits are denied.  If he is not, the decision maker proceeds to Step 2.

Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude

substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to Step 4.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform his previous work, he is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the Fifth and final Step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

This court's role on review of the decision of the ALJ is limited.  The court reviews that decision to determine if it was supported by substantial evidence and contains a correct application of the law.  *Valentine v. Comm'r. Soc. Sec. Admin,* 574 F. 3d 685,690 (9th Cir. 2009).  This court is obligated to affirm the ALJ's findings if they are supported by substantial evidence and the reasonable inferences to be drawn therefrom.  *Molina v. Astrue*, 674 F. 3d 1104, 1110-11 (9th Cir. 2012).  Substantial evidence is such relevant evidence that a reasonable mind

might accept as adequate to support the conclusion.

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, the ALJ, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

## II. PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on July 9, 2009, alleging an onset date of January 1, 2007 due to the effects of hypertension, edema, foot pain, depression and Hepatitis C. (Tr. 75-82, 104, 499-503). He alleged these conditions caused him to be easily fatigued and that his chronic foot pain limited how long he could stand and walk. (Tr. 104). Plaintiff's application was denied initially and on reconsideration. (Tr. 30-33, 35-36). Plaintiff's hearing was held before

Administrative Law Judge James W. Sherry on February 16, 2011.  (Tr. 510-543).
On April 8, 2011 the ALJ issued a written decision finding Plaintiff not disabled
during the alleged period of disability.  (Tr. 8-22).

Plaintiff subsequently requested review of the ALJ's decision.  (Tr. 508-
509). The Appeals Council denied his request on September 21, 2012 (Tr. 4-7),
making the ALJ's ruling the "final decision" of the Commissioner as the term is
defined by 42 U.S.C. § 405(g).  Plaintiff commenced this action on November 16,
2012 seeking judicial review of the Commissioner's final decision. (ECF No. 1).

## III.  FACTUAL BACKGROUND

The facts are contained in the medical records, administrative transcript
(ECF No. 12)("Tr."), and the ALJ's decision, and are only briefly summarized
here.

### 1.    Plaintiff's History

Plaintiff, Willie Carter, was born in 1955 and was 51 years old on the alleged
date of disability onset of January 1, 2007, and 55 at the time of the ALJ's hearing
in 2011.  He graduated from high school, has attended some college classes, and
nearly completed a Certified Nursing Assistant training program.  Plaintiff served
approximately two years in the Air Force as a dietician clerk in a hospital and was
honorably discharged in 1975.  (ECF No. 519).

Plaintiff has a past history of drug use, alcohol dependence, and
homelessness, however he has successfully maintained sobriety since late 2004/
2005.  (ECF No. 225, 322, 429). Plaintiff has not worked since at least January
2007.  (Tr. 520).  Plaintiff's employment history reflects that he has worked
numerous jobs, mostly short term. Plaintiff could not precisely recall dates of
employment. Around 1998 (he reports after having undergone a court ordered drug
treatment program (Tr. 533)) he worked steadily for approximately two years as a
security guard for Ewing Bros., an impound yard in Las Vegas.  (Tr. 133, 521-522).
He reportedly left that job to be the caregiver for his mother for three years prior to

her death in 2004. (Tr. 490) After his mother died, he moved to Spokane.  (Tr. 83) In 2005-2006, he worked as an intermittent laborer (through a temporary agency, Labor Ready), in construction as a steel stud framer (Tr. 523), and as a janitor for Professional Building Maintenance (Tr. 328, 342) shampooing rugs and cleaning at Fred Meyer stores.

Though as an addict Plaintiff struggled to maintain employment (Tr. 535), over the course his lifetime he reports having worked as a telemarketer,  rubber gasket molder, adult caregiver (spending three years caring for his mother), food processing worker in a Tyson chicken plant, construction worker, storage tank insulation installer, fence installer, ranch hand, cook at a family restaurant, and cable installer. (ECF No. 122-133).

Plaintiff re-married in 2007, and since that time has lived with his wife and four minor step children.

**2.    Medical Evidence**

The medical record includes treatment notes from the Spokane Veterans Administration Medical Center from 11/1/2005-12/8/2010; a record from Spokane Mental Health (Tr. 488-497); and psychological evaluations conducted on December 20, 2005 (John Davis, MHP) (Tr. 158-161) and October 26, 2009 (Scott Mabee, Ph.D.) (Tr. 427-432).  Mental and physical assessments were performed by Patricia Kraft, Ph.D. (November 9, 2009((Tr. 433-450) and Charles Wolfe, M.D. (October 15, 2009)(Tr. 419-426). The court has not exhaustively related herein the Plaintiff's entire medical history, only the most important evidence relevant to the issues raised by the parties.

Plaintiff's chief complaint is chronic foot pain.  In May 2008, Plaintiff was referred for x-rays of his feet which concluded Plaintiff had, in both feet, "markedly advanced degenerative changes of the first metatarsophalangeal joint, sclerosis, joint space obliteration, and osteophyte formation." (Tr. 260). On May 30, 2008, while he undergoing a 48-week treatment regimen for Hepatitis C which

had began in August of 2007, Plaintiff reported to the VA staff that he had pain in both feet of such severity he was near the point he could not walk (Tr. 263).  That day he was seen by his primary care provider, Dr. Mark Charlton, who prescribed him Oxycodone for pain management. (Tr. 261). Plaintiff also began consulting with a podiatrist, who recommended no surgery be performed until after his completion of Hepatitis treatment.  (Tr. 252).  Plaintiff received orthotics which helped him (Tr. 243), although he testified he only "wore them for a while" until he developed some neuropathy (Tr. 525). In September 2008, after concluding treatment for Hepatitis, Plaintiff inquired of Dr. Charlton as to possibly using a non-narcotic for pain management (possibly Lyrica), but Dr. Charlton prescribed Gabapentin in addition to his prescription for hydrocodone. (Tr. 243-245).  The court notes that contrary to the ALJ's decision, the record does not reflect the Plaintiff's prescription was ever "changed to a non-narcotic pain medication (Lyrica)." Tr. at 17. In October 2008, Plaintiff consulted Dr. Charlton again for foot pain and was prescribed hydrocodone (5 mg) to be taken as needed up to 3 doses per day "so that...would give him some windows of time where he can be walking with decreased pain." (Tr. 252).

On March 3, 2009, after reporting worsening constant foot pain, Dr. Charlton would not increase the amount of prescribed short-acting opiate and recommended Plaintiff be on "chronic narcotic therapy."  Dr. Charlton advised that although "complete relief of all pain is often not possible," the goal is to "increase [his] ability to function in the activities required for day to day living."  (Tr. 238).  He warned that "[i]f taken incorrectly, chronic pain medications can actually decrease your ability to function..." (Tr. 239).  Though "quite an increase" over the prior prescribed hydrocodone, he prescribed the minimum single dose of long-acting Morphine (15 mg) twice daily and the resumption of gabapentin (which Plaintiff had stopped taking as he suspected it was causing swelling in his feet).  (Tr. 232-233).  On September 4, 2009, Plaintiff underwent a surgery (arthrotomy with

cheilectomy) on his right foot for treatment of hallux limitus. (Tr. 400-418).

The record reflects, after his surgery and through 2010, Plaintiff continued to take Morphine on a regular basis, his narcotic pain dosage did not escalate, no complaints were made regarding side effects of Morphine, and no other treatment was sought for uncontrolled pain. (Tr. 397, 453-487).

**3.      Plaintiff's Testimony**

At the administrative hearing in February 2011, Plaintiff testified that both of his feet hurt.  He testified they "throb" even when he is sitting. While he stated that he is able to walk for 20-minutes, he claims that afterward the pain worsens and so he will sit down, raise his feet, and have his wife massage them to make it "bearable."  (Tr. 528).  He testified that to help manage the foot pain he sleeps with his feet raised up (Tr. 526), has his wife rub them daily (Tr. 525), alternates soaking them in hot and cold water, and sometimes walks with a cane which helps him "muddle through" "until the [M]orphine will kick in." (Tr. 527).

Plaintiff testified that the Morphine "helps a lot." (Tr. 526).  When asked by counsel whether he has any side effects of the Morphine, Plaintiff described a side effect occurring occasionally if he did not take it as prescribed:

> Sometimes, sometimes, sometimes instead of like being able to function, it'll, it'll be too much some, some kind – somewhere.  If I don't – like I have to take it with meals or whatever. If I take it without a meal, like if I forget or whatever and just take it, then it then it – my feet will feel like, just like they're real, real heavy and like walking with bricks on your foot or something, you can't you know – like I broke the, the big toe, the toenail, I, I kicked the stairs going up the stairs one day, and the whole toenail about come off...

(Tr. 527).

**4.      Vocational Expert Testimony**

At the administrative hearing, Thomas Polsin, the vocational expert (VE), identified Plaintiff's past relevant work as 1) a construction worker (DOT # 869.687-026)(unskilled, very heavy level of exertion), 2) a commercial or institutional cleaner (DOT # 381.687-014) (unskilled, very heavy), and 3) a security guard (DOT # 372.667-034)(semi-skilled, light). The ALJ then posed a

hypothetical question with an individual of Plaintiff's age, education, and work experience plus the following limitations: 1) ability to perform light work; 2) ability to lift up to pounds at a time; 3) ability to frequently lift or carry 10 pounds; 4) ability to stand or walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; 5) unlimited ability to push/pull with upper extremities within lifting restrictions; 6) occasional ability to use foot controls with the lower extremities; 7) occasional climbing of ladders, ropes or scaffolds and balancing; 8) ability to frequently climb ramps or stairs; 9) avoidance of exposure to extreme cold, vibration and hazards such as moving machinery and unprotected heights; 10) ability to perform simple, routine, repetitive tasks; 11) away from public and with superficial co-worker contact; 12) low-stress; 13) occasional decision-making; 14) occasional changes in the work setting; and 15) no fast paced production requirements.  The VE responded that such person could perform Plaintiff's past relevant work as a security guard, so long as emergencies only occurred on a rare basis (once a year). (Tr. 539).   Alternatively, the VE found that such an individual would be able to perform the duties required of a small parts assembler, bottle packer, and photocopy machine operator. (Tr. 539-540).

Plaintiff's counsel then appropriately asked the VE using the same hypothetical posed by the ALJ, whether the regular use of narcotic pain medication would "wipe out jobs like small parts assembler or photocopy operator."  (Tr. 541). The vocational expert responded that it would, as an employer would not want to employ such a person in a position "around any kind of machinery."  (Tr. 541).

Plaintiff's counsel then asked whether it would matter if the individual could not stay on his feet for more than an hour at a time without a break to sit for an equivalent period.  The VE responded, "...with these jobs that I cited, that would probably preclude all three of them." (Tr. 541).  Finally, Plaintiff's counsel asked whether it would matter if the individual missed work three times a month "due to depression and inability to function,"to which the VE responded it would "without

question" affect the person's ability to retain employment.  (Tr. 542).

**5.    Commissioner's Findings**

The ALJ found at Step 1 that Plaintiff met the insured status requirements through December 31, 2011 and had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.  (Tr. 13).

At Step 2, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease bilateral great toes; hepatitis C; dysthymia vs. major depressive disorder, recurrent; polysubstance abuse; and antisocial features.

At Step 3, the ALJ determined that the Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1 (Listings).

At Step 4, the ALJ determined the Plaintiff had the residual functional capacity ("RFC") to perform light work involving: occasional use of his lower extremities to operate foot controls; occasional climbing of ladders, ropes or scaffolds; occasional balance; simple, routine and repetitive tasks; away from the general public; superficial coworker contact; and with low stress.  The ALJ also held the Plaintiff should avoid work with concentrated exposure to extreme cold, vibrations and hazards such as moving machinery and unprotected heights, as well as fast-paced production requirements.  (Tr. 15). Based upon this determination of Plaintiff's RFC, the ALJ concluded Plaintiff could perform his past relevant work as a security guard.  (Tr. 21).  Alternatively, at Step 5, the ALJ, relying upon testimony of a vocational expert, concluded that there are jobs that exist in significant numbers in the national economy that the claimant can perform, including small parts assembler, bottle packer, and photocopy machine operator. (Tr. 21).  Accordingly, the ALJ concluded that Plaintiff was not  disabled, as defined by the Social Security Act, from January 1, 2007 through the date of the decision, April 8, 2011.

**III. ISSUES**

Plaintiff's Motion alleges the ALJ erred by failing to: 1) include in the formulation of Plaintiff's RFC and consequent hypothetical propounded to the VE several moderate limitations assessed by Dr. Patricia Kraft; and 2) "properly consider the side effects from his medication" (ECF No. 16 at 11) and failed to provide any reasons for rejecting the credibility of his testimony regarding his side effects from the Morphine. (ECF No. 16 at 12).

The court encourages counsel to include a Statement of Issues in Motions for Summary Judgment in social security appeals. Listing the issues assists the parties and the court in responding to and defining the scope of the issues to be decided.

**IV.    DISCUSSION**

**A.    Failure to Account for All of Plaintiff's Functional Limitations**

Plaintiff contends that the ALJ's determination of his RFC and the subsequent hypothetical to the VE did not accurately reflect all of Plaintiff's functional limitations. Specifically, Plaintiff asserts that the ALJ failed to incorporate all of the limitations indicated by Dr. Kraft in her Mental Residual Functional Capacity Assessment. Plaintiff states that the ALJ "failed to properly consider or reject the opinions of examining sources" (ECF No. 16 at 9). Dr. Kraft did not examine the Plaintiff. In social security cases, there are three types of medical opinions: those of treating, examining, and non-examining physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir.2008). A treating physician's opinion generally carries more weight than that of an examining physician and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*. at 1202. Dr. Kraft is a non-examining "state agency psychological consultant" who conducted a mental impairment review based only on medical records. (Tr. 20).

Dr. Kraft reviewed the evidence in Plaintiff's file ("11/29/2006 to current") and on November 9, 2009, completed a Psychiatric Review Technique (PRT) form

(Tr. 443-446) as well as a Mental Residual Functional Capacity Assessment (MRFCA) form (Tr. 447-450).    In the check-box portion of the MRFCA, Section I "Summary Conclusions," Dr. Kraft noted moderate limitations on various capacities including the ability to: understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public, to ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors.  (Tr. 447-448).  In the final section of the form, Section III, "Functional Capacity Assessment," the author is instructed to "explain" these "summary conclusions in narrative form."  (Tr. 449). Dr. Kraft concluded Plaintiff "can remember and carry out simple tasks," is able to "persist and pace," "can do work away from the public with superficial coworker contact," and "can respond appropriately to routine changes in the workplace." (Tr. 449).

The ALJ accorded "significant weight" to Dr. Kraft's Mental Residual Functional Capacity Assessment. (Tr. 20).  The ALJ relied upon Dr. Kraft's narrative assessment and incorporated the narrative's restrictions into the hypothetical posed to the VE.  Plaintiff contends the ALJ erred by failing to also include the moderate limitations included in the "Summary Conclusions" in the hypothetical to the VE.  However, the ALJ was not obligated to include each summary conclusion found in Section I of the Assessment in his hypothetical question to the VE.  As the Social Security Administration has explained in its Programs Operations Manual: "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment" of the state agency psychologist who completes it. POMS DI 24510.060 (emphasis omitted), available at https://secure.ssa.gov/poms.nsf/links/0424510060; *see also Stubbs-Danielson v. Astrue*, 539 F.3d. 1169, 1173-75 (9th Cir. 2008)(finding no error where ALJ had included consultant's opinion from the narrative opinion); *Smith v. Comm'r of Soc.*

*Sec.*, 631 F .3d 632, 636–37 (3d Cir.2010) (affirming district court's decision "[b]ecause [appellant] cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient....").  As the individual limitations regarding Plaintiff's ability to function in a work environment listed in Section I were subsumed within Dr. Kraft's narrative assessment in Section III, the ALJ's RFC determination and subsequent hypothetical to the VE were properly supported by substantial evidence.

**B.    Side Effects**

Plaintiff contends the ALJ failed to consider side effects of Plaintiff's medication and failed to set forth "any reasons supported by the record" to reject Plaintiff's testimony regarding his side effects form the Morphine.

The ALJ must consider all factors that might have a significant impact on an individual's ability to work.   *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir.1993).  Such factors include the "type, dosage, effectiveness, and side effects of any medication" taken to alleviate pain or other symptoms.  *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir.2010) (citing to 20 C.F.R. § 404.1529(c)(3)(iv)).  When the ALJ discounts the claimant's testimony as to subjective limitations of side effects, he or she must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications. *See Varney v. Secretary*, 846 F.2d 581, 584 (9th Cir.1988).

However, medication side effects must be medically documented to be considered. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).   The ALJ did not fail to consider Plaintiff's medication for pain. The ALJ's opinion specifically discussed the Plaintiff's use of Morphine as treatment and then concluded that any side effects were not corroborated by the medical record.  (Tr. 17). The ALJ did not err. Beyond the fact of being prescribed Morphine, which is ordinarily reserved for treating more severe and unremitting pain, the Plaintiff presented no clinical

evidence or even *passing mention in the medical record* to the ALJ regarding the effects of Plaintiff's use of prescription narcotics. The medical evidence lacks even any indication suggesting that Plaintiff experienced *any* side effects of taking Morphine, much less side effects that were severe enough to limit his ability to work.  Accordingly, there was no basis for the ALJ to consider any alleged side effects. *See Osenbruck v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001).

Plaintiff's brief claims Plaintiff "testified that the side effects from the Morphine made it difficult for him to function at times." (ECF No. 16 at 11). When assessing the credibility of a claimant's testimony, the adjudicator must consider any subjective effects of medication. SSR 96–7p.  The ALJ is required to include reasoning for rejecting any *relevant* evidence, and where no reasoning is provided, the court generally remands for the ALJ to consider the impact of the medication side effects on the claimant's disability status.

Plaintiff's testimony was that "sometimes," when taken without food, *i.e. not as prescribed*, the Morphine makes his legs feel heavy, which makes it difficult to function.  A temporary manifestation associated with occasional noncompliance with medication regimens is not a limitation the ALJ was required to consider. Accordingly, the ALJ's failure to specifically discredit this testimony was not error. Plaintiff provided no testimony that he routinely suffered any medication side effects nor describe any routine functional limitations from the alleged side-effects.

Plaintiff's Motion further suggests that additional evidence of alleged side-effects consists of Plaintiff's own statements to the Administration in his disability application.  (ECF No. 16 at 11).  However, nowhere does Plaintiff attribute alleged physical limitations (associated with bending, lifting, walking, paying attention, and changes in his routine, etc), with medication side-effects.

Accordingly, the ALJ did not err in his consideration of Plaintiff's use of Morphine or by his failure to specifically discredit the Plaintiff's testimony concerning alleged side effects caused by occasional noncompliance.  As the ALJ

was not required to include possible limitations not supported by substantial evidence pertaining to the relevant period, the ALJ did not err in framing the hypothetical to the VE without reference to any possible limitation caused by medication side-effects.

**V.    CONCLUSION**

This court, in its limited role, finds that the Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. It must therefore be Affirmed. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

3. The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

IT IS SO ORDERED. The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

Dated this 16th day of December, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER – 15